# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES KENNETH SIPP, | ) |
| Plaintiff, | ) |
| | ) 07cv1517 |
| v. | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CONTI, District Judge.

### I. Introduction

Plaintiff Charles K. Sipp ("plaintiff") brought this action for review of the decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The parties submitted cross-motions for summary judgment. After consideration of the decision of the administrative law judge ("ALJ"), the submissions of the parties, and the entire record, the court finds the ALJ's decision is supported by substantial evidence, and will grant the Commissioner's motion for summary judgment, deny plaintiff's motion for summary judgment and enter judgment in favor of the Commissioner.

## II. Procedural History

On December 4, 2004, plaintiff applied for DIB alleging disability beginning November 20, 2002.[1]  Plaintiff alleged his disability was due to injuries sustained in a motor vehicle accident on August 18, 1999.  On May 4, 2005, plaintiff timely requested a hearing after his initial claim was denied.  (R. at 38-39.)  The hearing was held before the ALJ on December 11, 2006, during which plaintiff, represented by an attorney, testified, as did a vocational expert ("VE").  (R. at 525-69.)  The ALJ denied plaintiff's claim on January 25, 2007.  (R. at 13-25.)

On September 7, 2007, the Appeals Council affirmed the ALJ's decision, which became the final decision of the Commissioner.  (R. at 5-7.)  Plaintiff filed a complaint seeking judicial review of the Commissioner's final decision.

## III. Plaintiff's Background and Medical Evidence

Plaintiff was born on December 30, 1962 and was forty-three years old at the time of the hearing before the ALJ.  (R. at 529.)  He finished tenth grade and obtained a general equivalency diploma .  (R. at 533.)   He has past relevant work as a licensed plumber.  (R. at 534-36.)  The relevant period at issue is the date of the alleged onset of disability – November 20, 2002 –  to the date he was last insured – March 31, 2004.  (R. at 18.)

Plaintiff's medical history prior to November 20, 2002 is quite extensive.  Plaintiff was involved in a motor vehicle accident on August 18, 1999.  (R. at 287, 536.)  On September 10, 1999, plaintiff met with his physician, Timothy Janeway, M.D. ("Dr. Janeway").  (Id.)  He complained of soreness in his neck, occipital headaches, and pain going towards the shoulders.

---

[1]Plaintiff had previously filed an application for DIB on June 16, 2001, alleging a disability onset date of September 16, 1999.  An administrative law judge issued an unfavorable decision on November 19, 2002.  Plaintiff amended his disability onset date to November 20, 2002, for the current application. (R. at 19.)

(Id.) X-rays conducted on his cervical spine showed that his spine was normal. (Id.) Dr. Janeway noticed some tenderness in a long segment of plaintiff's cervical spine as well as plexus (nerves) tenderness bilaterally. (Id.) He diagnosed plaintiff with hyperextension of the cervical spine and noted that plaintiff's range of motion was about seventy percent. (Id.) Dr. Janeway prescribed a soft cervical collar. (R. at 286.) Dr. Janeway opined that plaintiff was disabled and would not be able to work at that point in time. (Id.)

On October 1, 1999, Dr. Janeway reported that plaintiff suffers from migraines. (Id.) Dr. Janeway recommended that plaintiff enroll in a therapy program and prescribed moist heat, cervical traction, and a massage for the cervical spine. (Id.) Plaintiff's migraines and stiffness persisted through visitations in November and December 1999 and January 2000. (Id.) Plaintiff had a cervical manipulation in January 2000, and reported it provided much improvement. (Id.) Plaintiff was not using his cervical collar and was experiencing less pain. (Id.) Plaintiff had started to mobilize his neck. (Id.) During a visitation on January 28, 2000, Dr. Janeway noted that plaintiff's post as a plumber had been terminated, although Dr. Janeway opined that returning to his job would be difficult due to his condition. (Id.) Dr. Janeway noted that plaintiff would have difficulty as "a plumber working in overhead positions and [he would] need to still be careful and protective of his neck." (Id.) Dr. Janeway also mentioned the possibility of future manipulation. (Id.)

On May 2, 2000, Dr. Janeway reported that an MRI of plaintiff's cervical spine was conducted and revealed a disc bulging at C5-6 level and posteriorly swelling of the spinous processes C6-7. (R. at 284.) Plaintiff continued to suffer occipital headaches. (Id.) Dr. Janeway noted that plaintiff's employer had not allowed him to return to light duty or supervisory positions and he could not perform his regular duties as a plumber since he could not

3

raise his head. (Id.) Plaintiff remained stiff at the cervical spine and had fifty percent motion. Dr. Janeway noted his view that plaintiff could not return to his previous position as a plumber. (Id.)

On August 8, 2000, plaintiff's condition was still the same although Dr. Janeway noted that plaintiff would be able to do "light duty sedentary type of employment . . . ." (Id.) On September 18, 2001, Dr. Janeway recommended that plaintiff undergo another manipulation procedure for his neck. (R. at 281.) He noted that plaintiff had not been able to return to work and the neurosurgeon that plaintiff saw had advised against an operative procedure. (Id.) Plaintiff continued to experience stiffness and soreness in his neck as well as nausea-inducing occipital headaches that radiated over the top of his head. (Id.) Dr. Janeway referred to the MRI results of August 2000 and also reported that plaintiff's former employer, Summit Academy in Butler, had eliminated his position as the head plumber. (Id.)

Plaintiff returned to see Dr. Janeway a year later on September 25, 2002. (R. at 274.) He observed that plaintiff was still having difficulty with his cervical spine. Although cervical spine manipulation did provide good benefits, plaintiff could not continue with the procedure since he was uninsured. (Id.) Dr. Janeway again stated that plaintiff would not be capable of being employed in any gainful fashion. (Id.) Dr. Janeway completed a physical capacity evaluation ("PCE") form reporting that plaintiff could stand and walk continuously for thirty minutes and sit continuously for sixty minutes. (R. at 278.) In an eight-hour day, Dr. Janeway stated that plaintiff could sit for three hours and stand for two hours. (Id.) Plaintiff could alternate between sitting and standing for five hours and lie down for three hours. (R. at 276.) Plaintiff could only lift five pounds, perform simple grasping, and occasionally climb, stoop, balance, and crouch. (Id.) Plaintiff did not have the capabilities to bend, kneel, crawl, reach, push, or pull. (Id.)

4

Plaintiff was to avoid moving machinery, hot air temperatures, vibrations, auto exhaust, and humidity. (Id.) Plaintiff also received treatment from William Zillweger, M.D. ("Dr. Zillweger"), prior to November 20, 2002. (R. at 264-67.) On September 21, 2002, plaintiff presented with migraines for which Dr. Zillweger prescribed medications. (R. at 266.)

During the period in issue – November 20, 2002 until May 31, 2004 – Dr. Janeway, on April 8, 2003, completed another PCE form. (R. at 271.) He noted plaintiff's diagnosis of chronic cervical spondylosis and migraine headaches. (Id.) The PCE form listed the same limitations that were set forth in the September 2002 PCE form. (R. at 271-73.)

After the period at issue, i.e. after March 31, 2004, plaintiff met with Dr. Janeway on January 4, 2005, who observed that plaintiff continued to have significant problems with the stiffness in neck and with his migraines. (R. at 269.) Plaintiff also had a limitation of motion, although there was no gross loss of neuralgia. (Id.) Dr. Janeway repeated his view of plaintiff's inability to engage in gainful employment due to his chronic posttraumatic cervical and lumbar spondylosis and migraine headache disease. (Id.) He noted that there was nothing of benefit he could offer plaintiff and he recommended that plaintiff see a neurologist. (Id.)

On January 29, 2005, Samuel I. Han, M.D. ("Dr. Han"), conducted a consultative examination. (R. at 288-97.) Dr. Han observed that plaintiff did not have any redness or swelling in his joints. (R. at 288.) He was able to ambulate with the use of assistive devices. (Id.) The level of pain in his neck was "5 to 6/10" and "3 and 5/10" in his lower back. (Id.) Plaintiff's daily activities included doing light housework and taking care of himself. (Id.) Dr. Han diagnosed plaintiff with cervical and low back pain which he opined was probably degenerative disc disease. (R. at 290.) Dr. Han stated that there was minimal limitation over plaintiff's neck and low back, which Dr. Han attributed to pain. (Id.) Dr. Han also noted that

5

plaintiff's work capacity was limited by "subjective symptoms of neck and back pain." (Id.) Plaintiff did not exhibit any muscle atrophy and had a normal range of motion in his joints. (Id.) Dr. Han reported that plaintiff could frequently lift twenty pounds and occasionally twenty-five pounds. (R. at 292.) Plaintiff could stand and walk for one to two hours in an eight-hour day, sit for eight hours with an alternating sit/stand option, and occasionally bend, stoop, crouch, kneel, balance, and climb. (R. at 292-93.)

On February 9, 2005, Dr. Janeway completed an employability form for the Pennsylvania Department of Public Welfare ("PDPW") and opined that plaintiff was permanently disabled. (R. at 322.) On February 22, 2005, Dr. Janeway completed a third PCE form which included similar limitations noted in the first two PCE forms. (R. at 327-29.) Dr. Janeway completed a fourth PCE form on June 1, 2005, listing the same limitations set forth in the preceding PCE forms. (R. at 324-26.) He cited the MRI conducted in 2000 and stated that plaintiff's treatment had reached the maximal level of medical improvement. (R. at 326.) Dr. Janeway's final prognosis was that plaintiff was permanently disabled. (Id.)

On February 23, 2005, state agency physician, Alfred Mancini, M.D. ("Dr. Mancini"), completed a residual functional capacity ("RFC") assessment after reviewing plaintiff's record. (R. at 300-07.) Dr. Mancini reported that plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit for about six hours. (R. at 301.) He noted that plaintiff's postural limitations included occasionally climbing, balancing, crouching, crawling, and kneeling. (R. at 302.) Dr. Mancini disagreed with Dr. Janeway's assessment and noted that little weight should be accorded to this opinion; Dr. Janeway's assessment was not supported by the record. (Id.) On December 11, 2006, Dr. Zillweger completed a PCE form concerning plaintiff's condition as of March 1, 2004.

(R. at 518-20.) He repeated the same limitations as listed by Dr. Janeway in the PCE forms he completed. (Id.)

At the hearing, plaintiff testified that his headaches are constant. (R. at 540.) His neurologist had asked him to stop drinking caffeine and taking Tylenol as a way to stop the low-grade headaches; none of these methods offered plaintiff relief. (Id.) He also testified that when he engages in strenuous activities, swelling develops in his neck which leads to migraine headaches. (R. at 541.) The frequency of the headaches vary, from every other week to every week and a half. (R. at 542.) The headaches can last four to five hours. (Id.) Plaintiff continues to take medication for his migraines and he also uses a traction unit which can sometimes pull at his neck. (R. at 546.) Plaintiff uses a TENS unit to help stimulate his muscles. (Id.) He did not undergo surgery because his treating sources (Drs. Janeway and Zillweger) advised him against the surgery due to the scar tissue (the cause of the large bulge on his neck) that exerts pressure on his spinal cord. (Id.) He was advised that surgery would only be possible if his hands became continuously numb for at least two weeks. (R. at 559-60.)

He is able to do laundry, take out the trash, and go grocery shopping, but avoids lifting heavy objects. (R. at 551.) He indicated that he could lift about five pounds. (R. at 552.) His son usually helps him with activities he cannot perform. (R. at 551, 554.) Plaintiff testified that driving bothers him as he is not able to sit for a prolonged amount of time and because he has a low range of movement in his neck. (R. at 532.) He, however, testified that he drove for two hours to go to a friend's cabin, but he had to lay down for a few hours afterwards. (Id.) Plaintiff indicated that the primary reason he cannot work is because of his migraines. (R. at 542.) Plaintiff also stated that if he had to perform sedentary work that required him to sit eight hours day, he would not be able to do it as he cannot sit for a prolonged amount of time. (R. at 558.)

The VE testified at the hearing. Considering the limitations of having to sit and/or stand alternatively every half hour and complete simple, routine tasks, the VE reported that a person with those limitations would be able to work in the positions of production inspector, checker or examiner, of which there are about 280,000 jobs. (R. at 565.) That person could also perform at the light level in packing jobs (160, 000 jobs). (Id.) Upon further questioning by the ALJ, the VE noted that if an individual with plaintiff's conditions had to be absent for more than a day or two each month, the person would be unable to perform any of the jobs listed above. (R. at 566.)

IV.     **Standard of Review**

Judicial review of the Commissioner's denial of a claimant's benefits is proper pursuant to 42 U.S.C. § 405(g). This court must determine whether there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-65 (1988); Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 549 (3d Cir.2003). This differential has been referred to as "less than a preponderance of the evidence but more than a mere scintilla." Burns v. Burnhart, 312 F.3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the factfinder. Id.; see Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have decided differently the factual inquiry).

## V. Discussion

To qualify for disability benefits under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see 42 U.S.C. § 423(d)(1).

In order to make a disability determination under the Social Security Act, a five-step sequential evaluation must be applied. 20 C.F.R. §§ 404.1520, 416.920. The evaluation consists of the following phases: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant's severe impairment meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy in light of her age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520, 416.920; Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process. Id.

In the instant matter, the ALJ found that: (1) plaintiff has not engaged in any substantial gainful activity since the alleged onset date of disability on November 20, 2002; (2) plaintiff met the requirement of having severe impairments, specifically cervical and lumbar spondylosis, migraine headaches, obesity, and depression; (3) plaintiff's impairments did not meet any of the listings in 20 C.F.R. pt. 404, subpt. P, app.1; (4) plaintiff was not able to perform his past

9

relevant work as a plumber; (5) plaintiff has the RFC to perform light work involving the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weight up to ten pounds, alternating between sitting and standing every half hour, and doing simple tasks; and with these limitations, plaintiff would be able to perform in occupations such as an assembler, a production inspector, and a packer. (R. at 21-28.)

Plaintiff essentially argues that the ALJ's decision is not supported by substantial evidence. His argument is threefold, he asserts that (1) the ALJ erred, as a matter of law, when he failed to accord controlling weight to the opinions of plaintiff's treating physicians, Drs. Janeway and Zillweger; (2) the ALJ did not properly assess his RFC; and (3) the ALJ relied on an inaccurate hypothetical question. Each of these issues will be addressed.

A. <u>Weight given to treating physicians' opinions</u>

Plaintiff contends that the ALJ ignored the opinions of his treating sources, Drs. Janeway and Zillweger, and that of the state consultant, Dr. Han. He asserts that the ALJ did not provide a sufficient explanation for his rejection of Dr. Janeway's findings in the four completed PCE forms. Finally, he argues that the findings in Dr. Han's consultative report do not support the ALJ's determination that plaintiff is able to engage in light exertional work.

The administrative law judge should accord treating physicians' reports "great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" <u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir.1999) (quoting <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d Cir. 1987)). An administrative law judge must weigh conflicting medical evidence and "may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" <u>Morales v. Apfel</u>, 225 F.3d 310, 317 (3d Cir. 2000) (quoting <u>Plummer</u>, 186 F.3d at 429). An administrative law judge must consider all

10

medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the administrative law judge's own credibility judgments, speculation or lay opinion. Morales, 225 F.3d at 317-18 (citations omitted).

A medical opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527 (d)(2). Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

Here, the ALJ did not ignore the findings and opinions of plaintiff's treating sources; rather, he found that Drs. Janeway's and Zillweger's opinion were not supported by the weight of the evidence in the administrative record. (R. at 17.) Plaintiff argues that the ALJ ignored the September 2002 and February 2005 PCE forms. Those PCE forms did not fall within the relevant period at issue and the ALJ did not err in the weight given to the opinions in those forms. See 20 C.F.R. § 404.101. The findings in those PCE forms were the same as those addressed in detail by the ALJ when he discussed Dr. Janeway's April 8, 2003 PCE form, the only PCE form that falls within the period at issue. (R. at 24.)

Dr. Janeway opined in each PCE form that in an eight-hour day, plaintiff can sit for three hours, stand for two hours, and lay down for three hours. Plaintiff can only lift five pounds and he cannot kneel, crawl, bend, pull, or push. Dr. Janeway also stated that plaintiff is permanently disabled. Medical opinions concluding that a claimant is disabled are not accorded weight,

11

because that opinion is a matter reserved to the Commissioner. A medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir.1994) (citing Wright v. Sullivan, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

As further proof of his inability to work, plaintiff cited the February 9, 2005 PDPW employability assessment form completed by Dr. Janeway in which he opined that plaintiff was permanently disabled and would not be able to engage in any gainful employment. Again, those opinions, because they are on matters reserved to the Commissioner, are not controlling. Adorno, 40 F.3d at 47-48. That form also was completed after the relevant period in issue.

The ALJ found Dr. Janeway's opinion to be contradicted by other medical opinions in the record, particularly those of Drs. Han and Mancini. The ALJ noted that plaintiff had informed Dr. Han that he was able to do light housework and attend to his own needs. (R. at 21.) He also noted that the neurological examination performed by Dr. Han showed that plaintiff experienced no loss of motion or sensory loss, no deformity, redness, or swelling in his joints, and his range of motion was "grossly within normal limits." (Id.) Contrary to plaintiff's argument that the RFC determined by the ALJ was not supported by Dr. Han's findings, the ALJ noted that Dr. Han's assessment included a sit/stand option (for eight hours) in addition to the standing/walking limitation of one to two hours. (R. at 22.) The ALJ's determination of light exertional work (occasionally lifting/carrying up to twenty pounds and frequently

12

lifting/carrying up to ten pounds, as well as sitting/standing every half-hour) incorporates the limitations prescribed by Dr. Han. The ALJ's RFC determination was also supported by Dr. Mancini's assessment. Dr. Mancini noted in his report that Dr. Janeway's opinion was not supported by the record. He reviewed plaintiff's records and found that plaintiff could frequently lift ten pounds, occasionally lift twenty pounds, sit for about six hours in an eight-hour work day, and stand/or walk for about six hours.

Plaintiff refers to the December 2006 PCE form completed by Dr. Zillweger to support his contention that the ALJ did not accord significant weight to his treating sources' opinions. Plaintiff asserts that the PCE form is relevant as Dr. Zillweger completed it with regard to plaintiff's condition as of March 1, 2004, and not plaintiff's current condition (i.e. as of December 11, 2006, the date the PCE form was completed). He alleges that Dr. Zillweger's findings are further bolstered by plaintiff's visitations with him during the time period from November 20, 2002 to March 31, 2004.

The court examined the records and notes that the December 2006 PCE form contains the same unsupported limitations that were present in the PCE forms completed by Dr. Janeway. Plaintiff's first visit with Dr. Zillweger during the aforementioned time period reflected in the record is not, February 27, 2002 as stated by plaintiff, but rather September 21, 2002. (R. at 266.) The record is sparse with regard to treatment notes from Dr. Zillweger during the period at issue and the court was not able to discern from the records cited by plaintiff whether Dr. Zillweger, in fact, treated plaintiff during the relevant time period. (R. at 264-67); see 20 C.F.R. § 404.1527(d); Plummer, 186 F.3d at 429 (treating sources' opinions should be accorded great weight especially when the opinions are based upon a longitudinal observation). Claimant did not point to any matter in those notes which would provide support for his argument. While the

13

ALJ did not comment on any treatment notes by Dr. Zillweger during the relevant period in issue, the record does not support that there was a continuing observation during that time. The court concludes that the ALJ did not err in finding that Drs. Janeway and Zillweger's opinions were not supported by the evidence of record and that substantial evidence in the record supports the determination of the ALJ regarding the weight to be afforded those opinions.

      B.      <u>Plaintiff's RFC and the hypothetical</u>

The court will discuss the second and third issues raised by plaintiff together because they relate to each other. Plaintiff contends that the ALJ did not properly assess his RFC because the record allegedly does not support the ALJ's determination that plaintiff could perform light exertional work. Plaintiff argues that the ALJ disregarded the VE's testimony regarding limitations not found by the ALJ and relied upon an incomplete hypothetical question.

"'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." <u>Hartranft</u>, 181 F.3d 358, 359 n.1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). At step five of the sequential analysis, the Commissioner is required to show that "other jobs exist in significant numbers in the national economy that [the claimant] could perform." <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 551 (3d Cir. 2005). An administrative law judge's determination about other jobs at step five is largely based on testimony provided by a vocational expert. <u>Id.</u> at 553 (citing <u>Podedworny v. Harris</u>, 745 F.2d 210, 218 (3d Cir. 1984); <u>see</u> <u>Boone v. Barnhart</u>, 353 F.3d 203, 205-06 (3d Cir. 2003).

The hypothetical question posed to a vocational expert must "reflect all of a claimant's impairments that are supported by the record . . . ." <u>Chrupcala v. Heckler</u>, 829 F.2d 1269, 1276 (3d Cir. 1987). If the question does not incorporate all the claimant's impairments, as established by the record, "the expert's response is not considered substantial evidence" in

determining the number of jobs in the national economy available to the claimant. Burns, 312 F.3d at 123.

In his decision, the ALJ found that plaintiff was capable of the following RFC:

> [C]laimant had the residual functional capacity to perform less than the full range of light work . . . . He can lift/carry up to 20 pounds occasionally and 10 pounds frequently; and sit/stand alternative every half-hour. Additionally he is limited to simple tasks.

(R. at 22-23.)

As stated earlier, the ALJ's RFC determination was supported by the medical findings of Drs. Han and Mancini which revealed minimal limitation around the neck area, a normal range of motion of joints, and the ability to perform light work with occasional postural activities. (R. at 290, 302.) The ALJ considered plaintiff's daily activities which included taking his son to school, doing the dishes and laundry, cooking, and going grocery shopping (without the lifting of heavy objects). (R. at 20.) Plaintiff was also able to drive, although he testified that he had to lay down when he drove for a prolonged amount of time. (R. at 532.) The ALJ noted that Dr. Janeway's treatment notes showed a slight disc bulge at C5-6, but there was no evidence of cord or never root compression. (R. at 21.)

Plaintiff's challenge to the ALJ's hypothetical question is predicated on his previous argument against the weight accorded to his treating sources' opinions and the ALJ's RFC determination. He argues that the hypothetical question posed by the ALJ to the vocational expert was erroneous since it did not accurately reflect his limitations. Specifically, he contends that the ALJ erred in excluding the need to lie down during the day from the hypothetical question. Plaintiff also contends that the ALJ erred in excluding plaintiff's need to be absent from work four times out of each month. The court has already addressed this issue as these

limitations were based on the findings of Drs. Janeway and Zillweger, which, as the ALJ found, were not supported by the medical evidence of record.

The ALJ posed a question to the VE and inquired into whether a person of plaintiff's age, education, and work experience with the limitations described above would be able to work in a profession in the regional or national economy that allowed for such limitations. (R. at 564-65.) The VE testified that there are jobs in national economy that fall within the light exertional level. (Id.) The court, therefore, finds that the ALJ's determination about plaintiff's RFC is supported by substantial record evidence and the ALJ did not err in the hypothetical question he relied upon because it incorporated all of plaintiff's impairments supported by the record.

**VI.    Conclusion**

The court reviewed the record, including the ALJ's findings of fact and decision, and concluded that the ALJ's finding that plaintiff was not disabled under the Social Security Act is supported by substantial evidence of record. The decision of the ALJ denying plaintiff's application for DIB will be affirmed.

Plaintiff's motion for summary judgment (Document No. 5) will be **DENIED**, and defendant's motion for summary judgment (Document No. 7) will be **GRANTED**.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: January 30, 2009